UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR K.,<br><br>        Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>        Defendants. | Case No. 23-cv-04886-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 19 |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed for Title II benefits on May 21, 2018. (Administrative Record ("AR") 175.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 83, 100.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ held on November 6, 2019. (AR 33.) Following the hearing, the ALJ denied Plaintiff's application on December 3, 2019. (AR 29.) Plaintiff requested review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on June 26, 2020. (AR 1.)

Plaintiff sought judicial review, and the Commissioner agreed to a voluntary remand. (AR 503-04.) The ALJ held a post-remand hearing on April 14, 2023. (AR 448.) Following the hearing, the ALJ again denied Plaintiff's application on May 25, 2023. (AR 441.) Plaintiff

1  commenced the instant action for judicial review on September 25, 2023. (Dkt. No. 1.) Plaintiff
2  filed his motion for summary judgment on January 31, 2024. (Pl.'s Mot. Dkt. No. 17.) Defendant
3  filed its opposition and cross-motion for summary judgment on March 1, 2024.[1] (Def.'s Opp'n,
4  Dkt. No. 19.) Plaintiff filed his reply on March 19, 2024. (Pl.'s Reply, Dkt. No. 22.)

## II.  LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment

---

[1] Defendant's opposition fails to comply with Civil Local Rule 3-4(c)(2), which requires that all text -- including footnotes -- be "in 12 point type or larger." Defendant's opposition includes thirteen footnotes, all of which are smaller than 12 point type. Page 13 of Defendant's opposition is almost entirely comprised of footnotes. "Arguments raised only in footnotes . . . are generally deemed waived." *See Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). The Court therefore declines to consider any arguments made in the footnotes.

Plaintiff's briefs, in turn, have multiple citations to unreported district court cases that only include the case number, but not the Westlaw or Lexis citations (or pin cite). This is not appropriate and puts an unnecessary burden on the Court to find both the opinion and the relevant passages. The court declines to do so.

2

1    or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at
2    721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner
3    proceeds to step three, and determines whether the impairment meets or equals a listed impairment
4    under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is
5    met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.
6        If a claimant does not have a condition which meets or equals a listed impairment, the
7    fourth step in the sequential evaluation process is to determine the claimant's residual functional
8    capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis,
9    despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can
10   perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal
11   standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a).
12   If the claimant meets the burden of establishing an inability to perform prior work, the
13   Commissioner must show, at step five, that the claimant can perform other substantial gainful
14   work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the
15   burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th
16   Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III.    DISCUSSION

Plaintiff challenges the ALJ's decision on two primary grounds: (1) the ALJ failed to properly consider certain medical opinions, and (2) the ALJ improperly rejected Plaintiff's symptom testimony. (Pl.'s Mot. at 2.) Based on these alleged errors, Plaintiff also asserts that the ALJ's Step Five finding is not supported by substantial evidence. (*Id.*)

**A.    Medical Opinions**

Plaintiff asserts that the ALJ failed to properly assess the persuasiveness of multiple medical opinions. (Pl.'s Mot. at 12.) Under the March 2017 regulations, the SSA "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical opinion is supported by relevant and objective

3

medical evidence) and "consistency" (the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources). *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Id.* An ALJ, however, "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (internal quotation omitted).

### i. Ida Poberezovsky and Perez Rafael-Espejo, M.D.

On June 21, 2018, Ms. Poberezovsky, Plaintiff's therapist, and Dr. Rafael-Espejo wrote a letter, stating that Plaintiff suffered from major depressive disorder and social anxiety disorder. (AR 339.) Ms. Poberezovsky and Dr. Rafael-Espejo opined that Plaintiff's psychiatric symptoms were detrimental to his cognitive functioning, social skills, and ability to interact appropriately with supervisors and peers, and that his low energy and poor concentration would jeopardize his ability to understand and complete tasks in a timely manner. (AR 340.) They also opined that Plaintiff's symptoms would preclude him from fulfilling the demands of work duties within normal working hours and up to employers' standards. (AR 340.)

The ALJ found this opinion unpersuasive, stating that it "appear[ed] to rely exclusively upon the claimant's subjective complaints because it is unsupported by objective observations as described in Dr. [Rafael]-Espejo's treatment records." (AR 432.) Rather, the treatment records consistently showed Plaintiff was pleasant and cooperative with "normal memory/concentration/abstraction ability" and average intelligence. (AR 432.) The ALJ also explained that Dr. Rafael-Espejo's January 2018 annual assessment showed improvement "with an essentially normal mental status examination." (AR 432.)

The Court finds no error. For example, the ALJ pointed to mental status examinations from October and December 2019, during which Dr. Benjamin Elswick found that Plaintiff's speech was coherent, logical, and goal directed, and that he had logical and linear thinking. (AR

4

432-33 (citing 418-19, 824).) Dr. Elswick also found that his insight was good and social judgment was intact. (*Id.*) Mental status examinations in February, April, June, September, and December 2022 likewise found that Plaintiff's concentration was intact, his mood stable, his thought process logical and organized, his insight and judgment intact, and his memory unimpaired. (AR 434 (citing 882, 885, 888, 893, 897).)

Plaintiff does not appear to dispute that these mental status examinations were normal; instead, Plaintiff argues that "a normal mental status examination is not inconsistent with the limitations the providers assessed based on [Plaintiff]'s depression." (Pl.'s Mot. at 13; *see also* Pl.'s Reply at 11.) The ALJ, however, pointed out that the mental status examinations directly contradict Ms. Poberezovsky's and Dr. Rafael-Espejo's opinions, such as their opinion of his poor concentration being contradicted by mental status examinations showing intact concentration. *See Woods*, 32 F.4th at 793 (affirming ALJ's finding that medical opinion was unpersuasive where it was inconsistent with the overall treating notes and mental status exams in the record); *John H. v. Kijakazi*, No. 22-cv-02864-DMR, 2023 U.S. Dist. LEXIS 170759, at *18 (N.D. Cal. Sep. 25, 2023) (affirming ALJ's finding that medical opinions were unpersuasive where the opinions were not supported by the mental status examinations that were within normal limits); *Joseph P. v. O'Malley*, No. 23-cv-03853-TSH, 2024 U.S. Dist. LEXIS 60667, at *34 (N.D. Cal. Apr. 2, 2024) (same).[2] (AR 432.) Further, Plaintiff does not challenge the ALJ's finding that Ms. Poberezovsky's and Dr. Rafael-Espejo's opinions were unsupported by the treatment records, which are an alternate reason for the ALJ's conclusion that their opinions were unpersuasive. Accordingly, the Court finds that the ALJ did not err as to this opinion.

### ii. Elena Stukova and Alla Volovich, Ph.D.

In October 2019, Ms. Stukova and Dr. Volovich wrote a letter, stating that Plaintiff suffered from major depressive disorder, resulting in problems with memory and concentration,

---

[2] Plaintiff argues that there were other mental status examinations showing abnormalities, such as Dr. Steven Cheung's reports of suicidal ideation. (Pl.'s Mot. at 15.) The ALJ, however, explained that Dr. Cheung's mental status examinations revealed only a flat affect, and that the reports of suicidal ideation were limited to December 2018 and January 2019. (AR 432.) Notably, Plaintiff does not assert that the ALJ improperly weighed Dr. Cheung's medical opinion.

1    feelings of hopelessness and helplessness, isolation, and loss of energy and motivation. (AR 421.)

2    Ms. Stukova and Dr. Volovich opined that Plaintiff would be unable to obtain and maintain a paid

3    position due to a compromised ability to maintain a work-life schedule, to do things for a long

4    enough time, to make choices and decisions in reasonably stressful situations, and to interact in a

5    professional way with co-workers, supervisors, managers, and the general public. (AR 421.)

6        The ALJ found this opinion unpersuasive. The ALJ attributed the opinion solely to Ms.

7    Stukova, who is an intern and not an acceptable medical source. (AR 432.) The ALJ further

8    found that Ms. Stukova's notes only recorded Plaintiff's subjective reports and included no mental

9    status examinations or objective findings, and that she had only seen Plaintiff once when she

10   provided the October 2019 opinion. (AR 432.) The ALJ also explained that Ms. Stukova's

11   observations were unsupported by Dr. Elswick's normal mental status examinations. (AR 432-

12   33.) The ALJ pointed to Plaintiff's stated "desire to travel as a way to cope with his depression,"

13   which the ALJ found indicated much less limitation in social interaction than alleged. (AR 433.)

14       As an initial matter, the Court finds (and Defendant admits) that the ALJ erred in finding

15   that Ms. Stukova was not an acceptable medical source; the letter was also signed by Dr.

16   Volovich, who is a medical source. (*See* Def.'s Opp'n at 9.) The Court, however, finds this error

17   to be harmless because the ALJ gave other reasons for finding the letter unpersuasive. Again, to

18   the extent Plaintiff complains about the ALJ's reliance on the normal mental status examinations,

19   the Court finds no error. (*See* Pl.'s Mot. at 14-15.) Further, Plaintiff does not challenge the ALJ's

20   finding that the opinion lacked support, including the lack of objective examination findings. (AR

21   432.) Accordingly, the Court finds the ALJ did not err as to this opinion.

22       **iii.    Barrie Jason Roer, Psy.D.**

23       In November 2022, Dr. Roer conducted a psychological evaluation, stating that Plaintiff

24   suffered from major depressive disorder and generalized anxiety. (AR 725.) Dr. Roer opined that

25   Plaintiff had a mild limitation in his ability to understand, remember, and perform

26   simple/repetitive written and oral instructions, and that he had moderate limitations in his abilities

27   to understand, remember, and perform complex/detailed written and oral instructions, to interact

28   appropriately with others, to maintain concentration and attention and persistence/consistency, to

1 adapt to the usual stresses common to a competitive work environment, to perform activities
2 within a schedule and maintain regular attendance, and to complete a normal workday or
3 workweek without interruptions. (AR 726.)

4     The ALJ found this opinion partially persuasive. The ALJ found that Dr. Roer's Weschler
5 Adult Intelligence Scale ("WAIS-IV") results (which placed Plaintiff in the 1 percentile with an
6 IQ of 67) were not an accurate reflection of Plaintiff's cognitive functioning, which consistently
7 showed intact concentration and memory. (AR 435.) The ALJ also pointed out that such results
8 showing intellectual disability were inconsistent with Plaintiff's history as a valedictorian, college
9 graduate, and computer programmer. (AR 435.) The ALJ also found that Dr. Roer's opinion that
10 Plaintiff would have moderate limitations in adapting or managing oneself was unsupported by his
11 activities of daily living, which included caring for his elderly mother, as well as treatment records
12 showing that punctuality and attendance were among Plaintiff's strengths. (AR 435-36.)

13     The Court finds no error. The ALJ explained why he found Dr. Roer's opinions to not be
14 fully supported. For example, while Plaintiff argues that Dr. Roer did not diagnose Plaintiff with
15 an intellectual disability, his WAIS-IV findings were so low that the ALJ could reasonably point
16 out that it was not supported by Plaintiff's history. (*See* AR 435, 724.) Likewise, the ALJ found
17 that Dr. Roer's opinions about Plaintiff's moderate limitation adapting or managing himself were
18 unsupported by his intact activities of daily living, including caring for his mother. While Plaintiff
19 argues that his mother is displeased with his work as a caregiver and that she only retains him so
20 that he is eligible for medical insurance, this does not address Plaintiff's activities of daily living.
21 (Pl.'s Mot. at 16 (citing AR 51-52).) For example, the ALJ pointed out that Plaintiff lives alone
22 and has complete activities of daily living. (AR 435.) The ALJ could reasonably find that
23 Plaintiff's ability to care for himself, in addition to limited care for his mother, contradicted Dr.
24 Roer's opinion that Plaintiff had moderate limitations.

25     Additionally, Plaintiff fails to explain how the ALJ did not incorporate Dr. Roer's
26 limitations otherwise. Dr. Roer opined that Plaintiff had mild or moderate limitations, with
27 moderate being defined as "more than a slight limitation in this area, but the individual is still able
28 to function satisfactorily." (AR 725.) The ALJ found moderate limitations with regard to

7

interacting with others, as well as in concentrating, persisting, or maintaining pace. (AR 436-37.) For that reason, the ALJ limited Plaintiff's RFC to simple, routine tasks that require no more than occasional interaction with the general public, as well as occasional but brief interactions with coworkers. (AR 437.) The ALJ further considered Plaintiff's decreased energy in finding that Plaintiff could not perform fast-paced work or work with high production quotas. (AR 437.) This is consistent with Dr. Roer's concerns that Plaintiff may have issues with concentration, frustration, and stress. (AR 726.) Thus, the ALJ accounted for the limitations opined by Dr. Roer except as to those opinions he found unpersuasive, namely his intellectual abilities and ability to adapt or manage himself. Accordingly, the Court finds the ALJ did not err as to Dr. Roer.

### iv. Andrea McDade

In February 2023, Ms. McDade issued a Mental Medical Source Statement, stating that Plaintiff suffered from depression, loss of interest in activities, decreased energy, sleep disturbance, and difficulty with concentration. (AR 902.) She opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and be punctual, to complete a normal workday/workweek without interruption, to understand and remember and apply information, to adapt or manage himself, and in concentrating or maintaining pace. (AR 903-05.) Ms. McDade also opined that Plaintiff could be absent from work for two days per month. (AR 905.)

The ALJ found this opinion partially persuasive, finding that Ms. McDade's opinions about Plaintiff having moderate limitations in understanding, remembering, and applying information were unsupported by treatment records where she consistently observed intact memory with no cognitive limitations, including reading for pleasure. (AR 434.) Likewise, the ALJ found that Ms. McDade's opinion that Plaintiff was moderately limited in adapting or managing himself was unsupported by her treatment records showing that Plaintiff lived alone and had complete activities of daily living, including driving a car, shopping at farmer's markets, and taking care of his mother. (AR 434.) The ALJ also found that her assessment that Plaintiff would miss two days of work per month was speculative because her treatment records showed no

8

1   problems with missed appointments, and noted that Plaintiff's punctuality and consistency in
2   attending his treatment visits was consistently noted as a strength. (AR 435.)
3         The Court finds no error. Plaintiff again argues that the caregiving activity was limited,
4   but does not address the ALJ's finding regarding Plaintiff's ability to care for himself and have
5   complete activities of daily living. (Pl.'s Mot. at 17.) Plaintiff also contends that Plaintiff's
6   punctuality in attending his treatment visits did not demonstrate an ability to maintain attendance
7   in a full-time work setting, but the ALJ could reasonably find that such evidence is inconsistent
8   with a finding that Plaintiff would have a moderate limitation in maintaining regular attendance
9   and being punctual. (*See* AR 904.) Further, the ALJ gave other reasons that Plaintiff does not
10  challenge; for example, Ms. McDade found moderate limitations in Plaintiff's ability to
11  understand and remember, despite having observed intact memory with no cognitive limitations.
12  (AR 434, 903-05.)
13        Additionally, Plaintiff again fails to explain how any error would not be harmless.[3] As
14  discussed above, the ALJ found moderate limitations, and limited the RFC accordingly. The
15  Court finds that the ALJ did not err as to this opinion.

### v.  Mika Handelman, Ph.D.

17        In April 2023, Dr. Handelman provided a declaration, which was in the form of questions
18  by Plaintiff's attorney and answers by Dr. Handelman. (AR 907-21.) Dr. Handelman reviewed
19  Plaintiff's medical records, and opined that Plaintiff would have a mild limitation in
20  understanding, remembering, or applying information. (AR 908-09.) He also found a moderate
21  limitation in the areas of interacting with others; concentration, persistence, or maintaining pace;
22  and adapting or managing oneself. (AR 909-10.) Dr. Handelman asserted that while Plaintiff
23  could perform the underlying tasks, there were "concerns about [Plaintiff's] ability to show up

---

[3] In the reply, Plaintiff for the first time raises the vocational witness's testimony that an individual who was off-task for 10% or more could not perform the occupations the ALJ relied upon at step five. (Pl.'s Reply at 9.) Arguments made for the first time on reply are waived. *See Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d at 962 n.8. Additionally, Ms. McDade stated that a moderate impairment would "impair the effective performance of the task incrementally for a total between 11%-20% of an 8-hour workday or 40 hour workweek." (AR 903.) Plaintiff does not explain whether an incremental impairment of effective performance is the same as being off task.

1    consistently to perform a full day work and full work week," such that his ability to work was
2    "really limited to part-time."  (AR 912-13, 918.)
3          The ALJ found Dr. Handelman's statements to be unpersuasive because they were "the
4    byproduct of a leading conversation conducted by the claimant's attorney for the purposes of
5    supporting his case," such that they had "no objective basis and could not be considered
6    unbiased."  (AR 436.)  The ALJ also observed that Dr. Handelman had not examined Plaintiff.
7    (AR 436.)  The ALJ noted that Dr. Handelman's opinion about Plaintiff's ability to consistently
8    attend work was unsupported by the treatment records showing that Plaintiff's strengths included
9    consistency and punctuality, and that Dr. Handelman's assessment regarding the lack of truly
10   significant improvements was unsupported by treatment records showing normal mental status
11   examinations in 2019 and stabilization on medication starting in September 2020, with only mild
12   intermittent depression reported throughout 2021 and 2022.  (AR 436.)  The ALJ also found that
13   in any case, Dr. Handelman also opined to no more than moderate limitations.  (AR 436.)
14         Plaintiff challenges the ALJ's rejection of Dr. Handelman's opinion solely on the ALJ's
15   assertion that the opinion was solicited by Plaintiff's counsel and the use of leading questions.
16   (Pl.'s Mot. at 18.)  The Ninth Circuit has found that "[t]he purpose for which medical reports are
17   obtained does not provide a legitimate basis for rejecting them."  *Lester v. Chater*, 81 F.3d 821,
18   832 (9th Cir. 1995).  While the SSA "may introduce evidence of actual improprieties," no such
19   evidence was presented in this case.  *Id.*  The mere fact that Plaintiff's counsel may have used
20   "leading questions" does not demonstrate bias.
21         That said, Plaintiff again does not challenge the other bases for the ALJ's rejection of Dr.
22   Handelman's opinion.  For example, Dr. Handelman's assessment regarding the lack of
23   improvement was contradicted by the normal mental status examinations and stabilization on
24   medication.  (AR 436.)  Further, Dr. Handelman opined that Plaintiff had no more than moderate
25   limitations, which the ALJ likewise found.  Accordingly, the Court finds that the ALJ did not err
26   as to Dr. Handelman's opinion.
27         **B.**    **Plaintiff's Testimony**
28         Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony.  In assessing the

United States District Court
Northern District of California

1    credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the
2    ALJ must engage in a two-step inquiry.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  An
3    ALJ must first determine "whether the claimant has presented objective medical evidence of an
4    underlying impairment which could reasonably be expected to produce the pain or other
5    symptoms."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up).  At this
6    step, a claimant need not show that her impairment "could reasonably be expected to cause the
7    severity of the symptom she has alleged; she need only show that it could reasonably have caused
8    some degree of the symptom."  *Id.*  Next, if a claimant meets this first prong and there is no
9    evidence of malingering, the ALJ must then provide "specific, clear and convincing reasons" for
10   rejecting a claimant's testimony about the severity of his or her symptoms. *Id.*

In evaluating the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation."  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  For example, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), and "whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Lingenfelter*, 504 F.3d at 1040.  Even though a claimant need not "vegetate in a dark room" in order to be eligible for Social Security Income benefits, certain activities or behavior may support a finding of no disability.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  For instance, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Even when those activities suggest some difficulty functioning, they may still be used as grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.  *See Turner*, 613 F.3d at 1225.

At the hearing, Plaintiff testified that he makes many mistakes, tended to forget everything, and had difficulty concentrating.  (AR 50.)  He further testified that his mother was unhappy with his caretaking work because he made a lot of mistakes, such as forgetting to buy what she wanted,

11

1 leaving the water open several times, and throwing an important paper into the garbage once. (AR
2 50-51.) Plaintiff testified that he spent most of his time staying home and laying in bed, and that
3 he did not go anywhere except to seldomly buy groceries. (AR 51-52.)

Plaintiff argues that the ALJ did not specify which testimony he found not credible, and that he did not provide clear and convincing reasons to support his rejection of Plaintiff's testimony. (Pl.'s Mot. at 22.) To the contrary, the ALJ did provide such information. The ALJ pointed to specific testimony and contradicting records, such as Plaintiff's testimony regarding his forgetfulness being contradicted with treatment records consistently showing intact concentration and memory. (AR 438.) The ALJ also discussed Plaintiff's testimony that he spent most of his time in bed, pointing to evidence of his increasing activities, including his multiple reports that he walked 10,000 steps per day. (AR 438, 751, 861, 877, 878.) While Plaintiff is correct that he is not required to "vegetate in a dark room," the ALJ can reasonably discredit his testimony by finding that his reports of daily significant walking is contradictory to his assertions that he spent most of his day in bed doing nothing at all. (*See* AR 52.) Accordingly, the Court finds no error.

### C. Incomplete Hypothetical Question

Finally, Plaintiff asserts that the ALJ failed to ask complete hypothetical questions to the vocational expert because of the claimed errors discussed above. (Pl.'s Mot. at 23.) Because the Court finds no error, the Court also finds that the ALJ did not fail to ask complete hypothetical questions.

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

Dated: September 25, 2024

KANDIS A. WESTMORE
United States Magistrate Judge